```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                                :
ANTHONY BOWENS,
                                                                :
                    Petitioner,              11 Civ. 2610 (JSR) (GWG)
                                             : 04 Cr. 0048 (JSR)
       -v.-
                                             : REPORT AND RECOMMENDATION
UNITED STATES OF AMERICA,
                                                                :
                    Respondent.
                                                                :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Anthony Bowens, currently an inmate at the Federal Medical Center Devens in Ayer, Massachusetts, has brought this petition for a writ of habeas corpus under 28 U.S.C. § 2255. On March 14, 2007, a jury found Bowens guilty of conspiracy to violate narcotics laws and of distribution and possession of cocaine base. He was originally sentenced to 180 months imprisonment on July 27, 2007. His sentence was later reduced by 36 months, to 144 months, at a resentencing hearing held on April 1, 2010. For the reasons set forth below, his petition should be denied.

I.     BACKGROUND

       A.      Procedural History

Bowens was indicted on February 22, 2005. See Indictment, filed Feb. 22, 2005 (Docket # 16 in 04 Cr. 48).[1] On March 3, 2005, John M. Burke was appointed as counsel for Bowens.

---

[1] On January 23, 2007, Bowens was charged in a superseding indictment, see Indictment, filed Jan. 23, 2007 (Docket # 379 in 04 Cr. 48), in which he was identified as Tony Felder a/k/a "Anthony Bowens," a/k/a "Psycho," a/k/a "Tyreek." Id. Bowens was named in the first and third counts, and was charged with the following offenses: (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of mixtures and substances containing "crack" cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846; (2) distribution and possession with intent to distribute less than five grams of a mixture and substance containing

See Docket # 104 in 04 Cr. 48. On March 2, 2006, Bowens wrote a letter to the court asking for new counsel. See Letter from Anthony Bowens to the Honorable Michael B. Mukasey, dated Mar. 2, 2006 (annexed as Ex. 9 to Declaration in Support of Petition, filed Apr. 15, 2011 (Docket # 3) ("Support Decl.")). Bowens complained that Burke was "unaware of a proposed 'global disposition,' which [Bowens had] requested that he pursue." Id. at 1. Bowens said that he had yet to "receive any information from Mr. Burke in connection with the Government's offer of the 'global disposition.'" Id. He also stated that he was "unable to make an intelligent and knowing decision of whether to proceed to trial or enter a plea, as a result of Mr. Burke's unwillingness to counsel [him] on these matter[s]." Id. at 2.

On April 26, 2006, Bowens wrote to Burke and stated that he had "no idea as to [his] current guideline range or status" and requested that Burke "[r]equest a formal Pimenthal [sic] letter from the AUSA." See Letter from Anthony Bowens to John Burke, dated Apr. 26, 2006 (annexed as Ex. 11 to Support Decl.). Bowens has not stated whether Burke replied to his letter. On May 2, 2006, Bowens filed a motion for replacement of counsel. See Motion for Replacement of Counsel, filed May 2, 2006 (Docket # 233 in 04 Cr. 48). Thereafter, Burke was relieved as counsel, and David Gordon was assigned as counsel to Bowens. See Order, filed July 7, 2006 (Docket # 250 in 04 Cr. 48).

The Government sent a draft plea agreement to Gordon on September 26, 2006. See Letter from John J. O'Donnell to David Gordon, dated Sept. 26, 2006 (annexed as Ex. C to Memorandum of Law of the United States of America in Opposition to Petitioner Anthony Bowens's Petition Under 28 U.S.C. § 2255 to Vacate or Correct Sentence, filed Dec. 28, 2011

---

"crack" cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C) and 18 U.S.C. § 2.

2

(Docket # 7) ("Resp. Mem. of Law")) ("Sept. 26 Letter").  At a pretrial conference, Gordon stated that he had discussed the plea offer with Bowens on "several occasions."  Transcript of October 13, 2006 Conference (annexed as Ex. E to Resp. Mem. of Law) at 5.

On October 13, 2006, Gordon was relieved as counsel, and Mark DeMarco was assigned in his stead.  See Order, filed Oct. 13, 2006 (Docket # 308 in 04 Cr. 48).  Shortly thereafter, Bowens sent DeMarco a letter requesting his "stat [sic] rap sheet A-S-A-P, so [he] can find out [his] criminal history level points."  See Letter from Anthony Bowens to Mark S. Damarco, dated Oct. 29, 2006 (annexed as Ex. 13 to Support Decl.).  He also requested that DeMarco "file a motion for [him] (Anthony B) to be co-countsel [sic] to confront who ever [sic] as well as ask questions at trai [sic]."  Id.

On November 29, 2006, the Government sent DeMarco a letter detailing an outstanding plea offer.  See Letter from David V. Harbach, II to Mark DeMarco, dated Nov. 29, 2006 (annexed as Ex. D to Resp. Mem. of Law) ("Nov. 29 Letter").[2]  That plea offer would have allowed Bowens to dispose of the case by pleading guilty to count one of the indictment.  See Letter from David V. Harbach II and Karl Metzner to Mark DeMarco, dated Nov. 29, 2006 (annexed to Nov. 29 Letter) ("Plea Offer").  The plea offer included a detailed description of Bowens' criminal history, which specified that he was in Criminal History Category I.  See id. at 3-4.  The offer stated that Bowens' stipulated Sentencing Guidelines range was 70 to 87 months, and that neither a downward nor an upwards departure was warranted.  See id. at 4.

On January 5, 2007, Bowens sent DeMarco a letter saying he did "not understand the plea-agreement [DeMarco] sent [him] in the mail."  See Letter from Anthony Bowens to Mark S.

---

[2] The same offer had been conveyed to David Gordon, Bowens' previous attorney.  See Sept. 26 Letter.

3

DeMarco, dated Jan. 5, 2007 (annexed as Ex. 15 to Support Decl.).  Bowens also stated that he was enclosing a copy of his "stat [sic] rap-sheet that [he] [had] been try [sic] to get you (S. Dema[rco], J. Burke, and Gordon) to look at but none of you ha[ve] gotten it."  Id.  Bowens specified that his "stat [sic] rap-sheet will let [DeMarco] know what i[s] [Bowens'] criminal history category, criminal history points, and the level" he was on.  Id.

That same day, Bowens sent a letter to the Honorable Jed S. Rakoff.  See Letter from Anthony Bowens to the Honorable Jed S. Rakoff, dated Jan. 5, 2007 (annexed as Ex. 16 to Support Decl.).  In that letter, Bowens complained about health problems he was having, and said he needed "a lawyer that will help [him] in all of [his] affairs."  Id.  Bowens also said that he was experiencing difficulties with his lawyer in that Bowens "ask[s] questions and get[s] no answers."  Id.

In February 2007, Bowens sent a letter seeking "replacement of counsel."  See Replacement of Countsel [sic] Motion (annexed as Ex. 18 to Support Decl.).  In that letter, Bowens made a litany of complaints against DeMarco, including a complaint that DeMarco "had not looked [into] the two open cases (felonys [sic]) that shows [sic] up on my rap sheet, I requested him to."  Id. ¶ 1.  Bowens makes no specific connection between this statement and any plea offer.  The letter also complains that Bowens' attorneys had not explained the case to him, and that "DeMarco have got up an [sic] walked out on our legal visit with out [sic] being done he have [sic] done this more than once, he have [sic] also hung up the phone on me."  Id. ¶ 14.  Bowens complained that his lawyer "ha[d] not helped [him] out at all[,] not even with a plea."  Id. ¶ 17.  This letter was misdirected within the courthouse and Judge Rakoff did not see it until after the trial was concluded.  See Transcript of April 2, 2007 Conference (annexed as Ex. 17 to Support Decl.) ("Apr. 2 Tr.") 8-9.

On March 14, 2007, following a jury trial, Bowens was convicted of conspiracy to distribute crack cocaine and of distribution of crack cocaine.  See Docket Entry, dated Mar. 14, 2007 in 04 Cr. 48.  On April 2, 2007, Judge Rakoff held a hearing in response to the misplaced motion for replacement of counsel and a letter Bowens had sent the court following his trial.  See Apr. 2 Tr. 2, 8.  At that hearing, Bowens again mentioned his concerns about his rap sheet.  He stated that he had "open felony cases which none of the lawyers that I have, Mr. Burke, Mr. Goldman or whoever was never able to explain it, what is these warrants."  Id. 12.  He explained that he was concerned about these open charges on his rap sheet because "even if [he] wanted to cop out, how could [he] cop out with these open cases, and nobody know what they are about?"  Id.  Bowens said that when he brought the problem up with his attorneys they said "[d]on't worry about it, it's nothing."  Id.

Bowens stated that he thought the old charges were "[r]elated to [this] case because [he] had read a plea agreement one time where it is stated anything that was further, if the government – " whereupon he broke off and asked to look for the plea agreement.  Id. 14.  Thereafter, Bowens engaged in a colloquy with the court to try to explain why he thought the old charges were relevant in his decision whether to accept a plea.

> The Defendant: It is something dealing with the plea agreement.  It says that if the government finds out that I was involved in any other –
> The Court: – any new crime.
> The Defendant: – a new crime –
> The Court: These are clearly old crimes.
> The Defendant: – or if they found out anything after I signed the –
> The Court: It wouldn't relate to this.  It wouldn't relate to this.  That is why your attorney was trying to tell you, don't worry about this.  It wouldn't relate to this.
> The Defendant: No.  It wasn't discussing that.  I was trying to clear it up on all of this –

Id. 15.

Bowens' trial attorney, DeMarco, was also at the hearing.  He explained to the court, in reference to Bowens' criminal history:

> there were no open felonies, nor were there open warrants.  I explained it to [Bowens] numerous times.  The plea agreement that was submitted to me and offered by the government to me and also to the first attorney, it was stipulated that he was in criminal history category I for a DWI conviction that he incurred in 1997.  That was it.  That was done.  Other than that, this piece of paper, this stack of papers that he had bore no relevance to his case.

Id. 16.  DeMarco went on to state that "[f]rom the first time [DeMarco] visited [Bowens] at the jail, his demeanor can only be described as nasty and abusive."  He conceded that he had "walk[ed] out on several of those counsel meetings."  Id. 16.  But he noted that he visited Bowens "no less than six times" in jail and "on every occasion he was abusive to [DeMarco], and there is no other way to describe it, he was nasty."  Id. 16-17.  DeMarco also stated that Bowens told him he wanted a new lawyer several times and that DeMarco told him to write to the judge.  Id. 17.

At the conclusion of the hearing, Judge Rakoff assigned Bowens a new attorney for sentencing purposes.  See id. 22.  On July 27, 2007, the Court did not impose a sentence within the range called for by the sentencing guidelines (235-293 months), see Sentencing Transcript, dated July 27, 2007 (annexed as Ex. A to Resp. Mem. of Law) ("July 27 Tr.") 6, but instead sentenced Bowens to 180 months of imprisonment, see id. 29; Judgment in a Criminal Case, filed July 27, 2007 (Docket # 526 in 04 Cr. 48).

Bowens appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit.  Bowens argued that there was insufficient evidence to prove his knowing participation in the conspiracy to distribute crack cocaine.  See United States v. Moore, 322 F. App'x 78, 81 (2d Cir. 2009) (summary order).  The Second Circuit found that the Government "presented enough evidence for the jury to reasonably infer that . . . Bowens participated in a

6

conspiracy to distribute crack cocaine." Id. at 82.

Bowens also argued that "his trial counsel was ineffective for failing to explain the Government's plea offer adequately and for refusing to notify the district court of Bowens's desire for new counsel." Id. at 83. The court declined to decide this claim on the merits, stating that "the record [was] not sufficiently developed for [the court] to resolve Bowens's ineffective assistance claim." Id. at 84. The Court of Appeals stated that any such claim "should be heard as part of a § 2255 motion if [Bowens] opts to file one." Id.

The Court of Appeals affirmed Bowens' conviction, but remanded the case for resentencing in accordance with Kimbrough v. United States, 552 U.S. 85 (2007). See Moore, 322 F. App'x at 84. On April 1, 2010, Bowens' sentence was reduced from 180 months to 144 months. See Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), filed Apr. 5, 2010 (Docket # 800 in 04 Cr. 48).

B.  The Instant Motion

Bowens filed his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on April 15, 2011. See Petition for Relief Under 28 U.S.C. § 2255, filed Apr. 15, 2011 (Docket # 1); Memorandum of Law in Support of Petition Pursuant to 28 U.S.C. § 2255, filed Apr. 15, 2011 (Docket # 2) ("Pet'r Mem. of Law"); Support Decl. On December 28, 2011, the Government filed a motion to dismiss Bowens' petition for relief. See Notice of Motion, filed Dec. 28, 2011 (Docket # 6); Resp. Mem. of Law. Bowens' submitted papers in opposition, see Memorandum of Law in Opposition to the Government's Motion to Dismiss the Petition of Anthony Bowens Pursuant to 28 U.S.C. § 2255, filed Feb. 17, 2012 (Docket # 10) ("Opp."); Supplemental Declaration in Support of Petition, filed Feb. 17, 2012 (Docket # 11); Declaration in Support of Petition, filed Mar. 7, 2012 (Docket # 13) ("Bowens Decl."), to which the

7

Government replied, see Reply Memorandum of the United States of America in Further Support of its Motion to Dismiss Anthony Bowens's Petition Under 28 U.S.C. § 2255 to Vacate or Correct Sentence, filed Mar. 8, 2012 (Docket # 14) ("Reply Mem.").

II.   APPLICABLE LAW

  A.   Law Governing Review of Section 2255 Petition

Section 2255(a) of Title 28 of the United States Code provides that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under this statute is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (citation and internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks and citation omitted).

In considering a § 2255 petition, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). On the other hand, if it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to

8

relief, the judge must dismiss the motion." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks and citations omitted).

Case law reflects that a hearing is required in § 2255 cases "where the petitioner has made a 'plausible claim'" for relief. Morales v. United States, 635 F.3d 39, 45 (2d Cir. 2011) (addressing ineffective assistance of counsel claims) (citing Puglisi, 586 F.3d at 213). To warrant a hearing, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence." United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1987); see also LoCascio v. United States, 395 F.3d 51, 57 (2d Cir. 2005) ("mere generalities or hearsay statements will not normally entitle the applicant to a hearing, since such hearsay would be inadmissible at the hearing itself") (internal quotation marks, punctuation, and citations omitted). The court must determine whether, viewing the record "in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief." Puglisi, 586 F.3d at 213. If any material facts are in dispute and a petitioner can identify the available sources of the relevant evidence, a petitioner's claims will warrant a hearing. See id. at 213-14 (noting that "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases"). Nonetheless, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." Aiello, 814 F.2d at 113-14. Furthermore, the Court is not required to presume the credibility of factual assertions "where the assertions are contradicted by the record in the underlying proceeding." Puglisi, 586 F.3d at 214.

However, even when a hearing is required, "'the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.'" Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001)

9

(quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); see 28 U.S.C. § 2255(c) ("A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."). Depending on the allegations in the petition, a "court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing." Chang, 250 F.3d at 86 (citing Blackledge v. Allison, 431 U.S. 63, 81-82 (1977)). Potential methods available to a court to supplement the record include "'letters, documentary evidence, and, in an appropriate case, even affidavits.'" Id. (quoting Raines v. United States, 423 F.2d 526, 529-30 (4th Cir. 1970)); accord Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (although court should not summarily dismiss a petition where factual issues exist, the Second Circuit "permits a middle road of deciding disputed facts on the basis of written submissions") (internal quotation marks and citation omitted).

A full testimonial hearing should be conducted if it would "offer any reasonable chance of altering [the court's] view of the facts." Chang, 250 F.3d at 86. A petitioner's statement is "sufficiently credible to warrant a hearing where it is accompanied by some 'objective evidence.'" Puglisi, 586 F.3d at 216. Nonetheless, "[t]o obtain an evidentiary hearing, Petitioner must . . . set forth in an affidavit specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief." Boakye v. United States, 2010 WL 1645055, at *6 (S.D.N.Y. Apr. 22, 2010) (citations omitted); accord Petrucelli v. United States, 2009 WL 4858081, at *13 n.1 (S.D.N.Y. Dec. 15, 2009) ("To warrant an evidentiary hearing, a habeas petitioner must raise detailed and controverted issues of fact supported by competent evidence."). Case law makes clear that a testimonial hearing need not take place if it would not succeed in providing additional material facts. See, e.g., Fermin v. United States, 2012 WL 1632696, at *9 (S.D.N.Y. May 4, 2012) (petitioner's "failure to provide

specific facts about any conversations to support his claim suggests that a testimonial hearing would do nothing to reveal such facts").

"It is within the district court's discretion to determine the scope and nature of a hearing." Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011); accord Campusano v. United States, 442 F.3d 770, 776 (2d Cir. 2006).

### B. Law Governing Ineffective Assistance of Counsel Claims

"In order to prove ineffective assistance, [a petitioner] must show (1) 'that counsel's representation fell below an objective standard of reasonableness'; and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Pham, 317 F.3d at 182 (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)); accord United States v. Brown, 623 F.3d 104, 112 (2d Cir. 2010); see also Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").

In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "'[j]udicial scrutiny . . . must be highly deferential,'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'"  Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689) (additional quotation marks and citation omitted); see Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (according counsel a presumption of competence).  To satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the

outcome." Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247-48 (2d Cir. 2006), cert. denied, 549 U.S. 1257 (2007).  The Second Circuit generally "requires some objective evidence other than defendant's assertions to establish prejudice." Pham, 317 F.3d at 182 (citing United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998) (per curiam)).

III.    DISCUSSION

Bowens raises three grounds for relief: (1) he was denied effective assistance of counsel with respect to his decision whether or not to plead guilty, see Pet'r Mem. of Law at 2-8; (2) counsel failed to notify the district court of Bowens' wish for new counsel, see id. at 9-10; and (3) the District Court failed to inquire into Bowens' request for new counsel, see id. at 10-14.  We address each of these grounds for relief separately.

   A.    Ineffective Assistance of Counsel During the Plea Process

Bowens argues that his counsel was ineffective during the plea process because his "counsel failed to provide sufficient information to ensure that Bowens understood the terms of the plea offer before advancing to trial." Pet'r Mem. of Law at 5.  However, Bowens does not allege that his counsel failed to tell him about the plea or gave him any incorrect information regarding any plea offer.  See Opp. at 7-8.  Instead, Bowens argues that "he never received information from his counsel about the implications of what he believed to be open counts on his rap sheet sufficient to enable him to make an informed decision about whether to proceed to trial." Id. at 8.  Specifically, Bowens says that "counsel had never satisfactorily addressed his concerns about certain warrants and apparently open felony cases that he feared could be used against him if he took a plea." Id.

"During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (quoting McMann v. Richardson, 397

12

U.S. 759, 771 (1970)); accord Purdy v. United States, 208 F.3d 41, 44-45 (2d Cir. 2000) ("[D]efense counsel 'must give the client the benefit of counsel's professional advice on th[e] crucial decision' of whether to plead guilty.") (quoting Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996)) (additional internal quotation marks and citations omitted)).  Additionally, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012).

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387.  "As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy, 208 F.3d at 45 (citations omitted).  However, because the "ultimate decision whether to plead guilty must be made by the defendant," a lawyer "must take care not to coerce a client into either accepting or rejecting a plea offer." Id. (citing Jones v. Murray, 947 F.2d 1106, 1111 (4th Cir. 1991) ("[V]arious [ABA] Standards place[] upon counsel an affirmative duty to avoid exerting undue influence on the accused's decision and to ensure that the decision . . . is ultimately made by the defendant.") (internal quotation marks and citation omitted) (omission in original)) (additional citation omitted).  The Second Circuit has held that "[c]ounsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." Id.  Second

Circuit case law "confirms that counsel has a professional obligation to adequately inform her client about the considerations that are relevant to her client's decision to accept or deny a plea bargain." Davis v. Greiner, 428 F.3d 81, 88 (2d Cir. 2005).

Bowens offers no specifics regarding the advice he received from his counsel concerning his criminal history. In his declaration – submitted after the Government pointed out this specific failing, see Resp. Mem. of Law at 17-19 – he states simply that he "felt that [his] lawyer was not able to answer [his] questions." Bowens Decl. ¶ 10. He claims that he "did not understand either [his] criminal history points or whether the government would be able to further prosecute [him] for those cases or increase [his] sentence because of" his open cases. Id.

The issue in assessing ineffective assistance of counsel, however, is not what Bowens understood per se but rather whether counsel's advice to Bowens fell below an objective standard of reasonableness. Bowens says that he and DeMarco had "serious communication problems," and that DeMarco "walk[ed] out on legal visits" and "h[u]ng up the phone" on him. Id. ¶ 8. But there is no description of any conversations between Bowens and DeMarco – let alone what Bowens asked about his open cases or what DeMarco told him in response. Thus, Bowens' claim of ineffective assistance is supported only by "[a]iry generalities" and "conclusory assertions," Aiello, 814 F.2d at 113, which do not permit a finding that counsel failed to properly advise him regarding the import of his criminal history on any plea offers.

Notably, DeMarco, Bowens' assigned counsel when the last plea offer was made, stated at a court proceeding that he had "explained it to [Bowens] numerous times. The plea agreement that was submitted to [defense counsel] and offered by the government to [him] and also to the first attorney, it was stipulated that [Bowens] was in criminal history category I for a DWI conviction that he incurred in 1997. That was it. That was done. Other than that, this piece of

paper, this stack of papers that he had bore no relevance to his case." Apr. 2 Tr. 16. Counsel's characterization of the advice he gave Bowens has never been contradicted by Bowens. Indeed, Bowens himself admitted at the hearing that when he asked his attorneys about the open charges that they told him, "Don't worry about it, it's nothing." Id. 12.

There is nothing in the record to suggest that DeMarco's advice on this score was incorrect or so incomplete as to warrant a finding that it fell below an objective standard of reasonableness. Notably, the plea offer the Government made contained a detailed description of Bowens' past criminal convictions and stipulated that Bowens had "one criminal history point and is in Criminal History Category I." See Plea Offer at 3. Furthermore, after trial, the court found that Bowens was in Criminal History Category I. See July 27 Tr. 6. Thus, Bowens has failed to provide evidence sufficient to show that his counsel acted unreasonably in advising him regarding the Government's plea offer.

B.  Failure to Notify Court of Defendant's Request for New Counsel

Bowens claims that DeMarco breached his "duty of loyalty" by failing to advise the court of Bowens' expressed desire for new counsel. See Pet'r Mem. of Law at 9. In order to prevail on this claim, Bowens must prove that he was prejudiced by DeMarco's failure to notify the court of his request for new counsel. See United States v. White, 174 F.3d 290, 296 (2d Cir. 1999) (where defendant's request for new counsel was based on disagreement over trial strategy, defendant still had to meet Strickland's two-prong test).

Here, Bowens argues that he was prejudiced because, absent DeMarco's failure to inform the court of his request for new counsel, the court would have conducted an inquiry. See Pet'r Mem. of Law at 9-10. Bowens alleges that he was prejudiced by the lack of a court inquiry because the inquiry would have led to either the appointment of new counsel or because his "lack

15

of understanding of the plea agreement would have been aired in open court and rectified either through a colloquy with the court or further discussion with counsel." Id. at 10.  Both these bases for showing prejudice are inadequate.

Bowens cannot show that new counsel would have been appointed because Judge Rakoff already found that in fact he would not have appointed new counsel.  At the time Judge Rakoff learned of the request, he stated that he would have <u>denied</u> the request for new counsel had it been presented to him prior to trial.  At Bowens' sentencing hearing, when the issue of Bowens' misplaced motion for new counsel came up, Judge Rakoff stated that

> given both the prior particulars of this case and my general practices in this area and what is commonplace in multi-defendant cases of this sort . . . I would have denied [the application for new counsel].  There is just no question that on the eve of trial a request for a third – excuse me – a fourth lawyer, a fourth lawyer which, of course, conveniently would have meant severing him from the trial of others on the grounds set forth in his letter as it finally reached me would have been denied.

July 27 Tr. 14.  Additionally, even if new counsel were appointed, it would be sheer speculation to assume that the outcome of Bowens' criminal case – including Bowens' decision to proceed to trial rather than plead guilty – would have been any different.

Bowens also claims that there was prejudice because consideration of the motion would have revealed his lack of understanding of the plea agreement, which would have been "aired" in open court.  <u>See</u> Pet'r Mem. of Law at 10.  In other words, he asserts that the mere holding of a hearing on his request for new counsel would have led to his better understanding of the plea offer (and presumably to his decision to accept it).  This basis also fails to satisfy the <u>Strickland</u> prejudice standard because, in order for Bowens to show prejudice from his counsel's failure to seek a hearing, there needs to be some type of causal relationship between the alleged constitutional error and harm beyond "but for" causation.  <u>See</u>, <u>e.g.</u>, <u>United States v. Parker</u>, 609

16

F.3d 891, 895 (7th Cir. 2010) ("Prejudice requires a showing that counsel's poor performance not only is a but-for cause of the complained-of result, but also 'deprive[s] the defendant of any substantive or procedural right to which the law entitles him.'") (quoting Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)) (additional quotation and citations omitted); United States v. Carter, 2009 WL 3526582, at *3 (N.D.N.Y. Oct. 23, 2009) (referring to the failure to establish prejudice "proximately related" to counsel's error); Arakelian v. United States, 2009 WL 211486, at *8 (S.D.N.Y. Jan. 28, 2009) (Ineffective assistance of counsel claim denied in part because petitioner "failed to show that counsel's actions are the proximate cause of his sentencing enhancement."). The purpose of the rule requiring a hearing on the appointment of new counsel is to actually reach a decision as to whether to appoint new counsel – not to inform the defendant regarding other matters. Thus, Bowens has not shown any prejudice that was actually caused by his counsel's failure to ask for a hearing on his request for new counsel.

    C.    Failure to Inquire

Finally, Bowens argues that independent of any claim of ineffective assistance of counsel, the court's failure to make any inquiry prior to trial into his request for new counsel merits reversal of his conviction. See Pet'r Mem. of Law at 12-14; Opp. at 2-3. "It is settled that where a defendant voices 'a seemingly substantial complaint about counsel,' the court should inquire into the reasons for dissatisfaction." McKee v. Harris, 649 F.2d 927, 933 (2d Cir. 1981) (quoting United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972)), cert. denied, 456 U.S. 917 (1982). However, "[w]here the failure to inquire causes the defendant no harm, that procedural irregularity cannot of itself be a basis for granting [relief]." Id.; accord Norde v. Keane, 294 F.3d 401, 412 (2d Cir. 2002) ("Although the trial judge should have inquired into [defendant's] belief that he was not being properly represented, a review of the record shows that [the defendant] at

17

all times received vigorous and capable representation . . . . Accordingly, . . . the failure of the trial judge to inquire was . . . harmless.").

Here, the court presumably cannot be faulted for failing to hold a hearing on an application it was unaware of. But even if it could, the error caused Bowens no harm given that the court stated that it would have denied the application anyway and, for the reasons stated above, the mere lack of an inquiry cannot provide a basis for showing prejudice. Thus, this purported error in failing to make inquiry "cannot of itself be a basis for granting [relief]." McKee, 649 F.2d at 933.

IV.     CONCLUSION

For the foregoing reasons, the defendant's motion to vacate his conviction under 28 U.S.C. § 2255 should be denied. The Government's motion to dismiss the petition (Docket #6 in 11 Civ. 2610) should be granted.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Jed S. Rakoff, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rakoff. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile,

P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: August 10, 2012
New York, New York

                                                          GABRIEL W. GORENSTEIN
                                                          United States Magistrate Judge

Copies sent to

Melinda Sarafa
Sarafa Law LLC
80 Pine Street, Floor 33
New York, NY 10005


John J. O'Donnell
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007

P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: August 10, 2012
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to

Melinda Sarafa
Sarafa Law LLC
80 Pine Street, Floor 33
New York, NY 10005


John J. O'Donnell
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007

19